UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN C. MENGE,

        Plaintiff,

v.

LRIS, LLC; PBPA; ROCKFORD POLICEMEN'S
BENEVOLENT AND PROTECTIVE ASSOC.,
UNIT 6; and KHURSHEED ASH-SHAFII,

        Defendants.

Case Number 25-11964
Honorable David M. Lawson

_____/

**OPINION AND ORDER GRANTING MOTION TO SET ASIDE DEFAULT, GRANTING MOTION TO DISMISS BY PBPA AND ROCKFORD POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOC., UNIT 6 FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, AND GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

The present libel case is an outgrowth of an earlier defamation action filed by the plaintiff Brian Menge in this Court, *Menge v. City of Highland Park*, No. 21-10152 (E.D. Mich.), alleging that defendant Khursheed Ash-Shafii falsely asserted that Menge has been fired from his position as a police officer for misconduct. Menge again sues defendant Ash-Shafii for repeating those statements, and he alleges that the other defendants republished them. Defendants PBPA and Rockford Policemen's Benevolent and Protective Association, Unit 6 have filed motions to dismiss and motions to set aside the Clerk's entry of default. The plaintiff filed a motion to amend his complaint. All the motions are opposed. The motions are fully briefed, and oral argument will not assist in their resolution. The Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2). The plaintiff's claim against defendant Ash-Shafii arises only under federal law, and the claims against the other defendants arise under state law; subject matter jurisdiction over the out-of-state defendants is not upset by the complete diversity rule. However, the plaintiff

has not alleged sufficient facts to establish that the PBPA defendants had sufficient minimum contacts with the State of Michigan to support the exercise of personal jurisdiction by this Court over the plaintiff's defamation claim. Those defendants have offered sufficient reasons to set aside the default entered. And the plaintiff has offered sufficient grounds to permit him to amend the complaint to expand the allegations concerning the citizenship of certain unincorporated entities named as defendants, namely PBPA and a non-moving defendant, LRIS, LLC.

## I. Facts

The following facts are drawn from the plaintiff's original complaint, except for certain facts concerning the citizenship of unincorporated defendants, which are drawn from the proposed amended complaint.

Plaintiff Brian C. Menge is a former police detective who was employed by the police department of the City of Highland Park, Michigan. The plaintiff was hired by the Highland Park Police Department in July 2014 and promoted to the rank of Detective in October of the same year. Seven years later, he sued the city alleging that he was demoted after he testified on behalf of anther police officer who was punished following the arrest of the mayor's son. That lawsuit ended in a substantial settlement for Menge. Shortly thereafter, Menge left his employment with Highland Park but later sought rehire. A member of the city council, defendant Khursheed Ash-Shafii, opposed Menge's reemployment and made defamatory statements about him at a city council meeting. Menge brought another lawsuit alleging slander and the violation of his First Amendment rights. That case is on interlocutory appeal at present.

Defendants PBPA and Policemen's Benevolent & Protective Association, Unit No. 6 (the PBPA defendants) are unincorporated associations representing the interests of current and former

police officers employed in the State of Illinois. Defendant LRIS, LLC is an Oregon limited liability company with all of its members being citizens of the State of Oregon.

On March 22, 2024, defendant Ash-Shafi published a statement on an internet website associated with "Concerned Citizens of Highland Park," which included a false statement that plaintiff had been terminated from his employment. The statement read as follows: "This is shameful — Officer [M]enge was fired and sue[d] the city." Compl. ¶ 40, PageID.11. On October 11, 2024, the PBPA defendants republished the false statement via another (unspecified) internet venue, stating as follows: "Brian Menge was a detective for the Highland Park Police Department in Michigan. Menge was terminated from employment and subsequently sued the city resulting in a settlement." *Id.* ¶ 37. On June 5, 2025, plaintiff through his counsel demanded a retraction from the PBPA defendants. The defendants allegedly removed the statement from the internet, but the content of the statement still appears in internet searches including Google. The defendants never have published any retraction of the statements.

The plaintiff says that he currently works as a private detective, and his professional reputation has been damaged because, when testifying as a witness in unspecified matters, he has been questioned about the defamatory statement that he was fired from his former position as a Highland Park detective, resulting in damage to the credibility of his testimony.

The plaintiff filed his complaint in this case on June 30, 2025. The complaint pleads claims for slander against all defendants, "republication" against the PBPA defendants and LRIS, LLC, and alleges claims under the First and Fourteenth Amendments via 42 U.S.C. § 1983 against defendant Ash-Shafii only. Certificates of service were filed, and the plaintiff subsequently procured defaults against several defendants on August 4, 2025. The default entered against defendant LRIS, LLC later was set aside by stipulation, and that defendant since has answered the

complaint. On the same day that the defaults against the PBPA entities were entered, those defendants appeared through counsel and filed their first motion to dismiss based on lack of personal jurisdiction and a motion to set aside the entries of default. On August 7, 2025, the Court ordered the plaintiff to show cause why the complaint should be allowed to proceed, observing that the allegations of citizenship for the unincorporated defendants were deficient. The plaintiff filed his motion to amend on August 21, 2025, and the PBPA defendants filed their second motion to dismiss — this one based on subject matter jurisdiction — on August 29, 2025.

## II. Motion to Set Aside Default

The PBPA defendants missed their response deadline by one day. The plaintiff, ever vigilant, sought and obtained the Clerk's entry of default against them. These defendants assert that their slightly tardy response was due to a hasty review of the certificate of service by defense counsel, which resulted in a miscalculation of the due date, and they move to set the default aside. They contend that there will be no prejudice since their responsive motions were overdue by one day at most, and they have raised several colorable defenses in their motions.

Federal Rule of Civil Procedure 55(c) "allows a district court to set aside an entry of default for 'good cause,' a standard that gives a district court 'considerable latitude.'" *Sutton v. Mountain High Invs., LLC*, No. 21-1346, 2022 WL 1090926, at *3 (6th Cir. Mar. 1, 2022) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). "In determining whether to set aside an entry of default, courts consider three factors: '(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced.'" *Ibid.* (quoting *United States v. $22,050 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010)).

The plaintiff acknowledges that "prejudice" and assertion of a "meritorious defense" are the "most important factors" when considering whether to set aside a default, but, despite mounting an extended presentation taking issue with the premises for the defendants' defenses, the plaintiff makes no effort to demonstrate how he was prejudiced by responsive pleadings that were filed no more than one day late.

Several reasons support setting aside the default against the PBPA defendants. *First*, the fault of these defendants for filing late was slight. Defense counsel represents that he misread the certificate of service and mistakenly logged the wrong due date for the defendants' response to the complaint, which he says was included in small print that he overlooked. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). No such intent is on display here, and the defendants' failing figures at most as excusable neglect on the part of counsel. *Second*, the PBPA defendants appeared promptly and filed their motions to dismiss and to set aside the complaint on the same day that the defaults were entered. The plaintiff has not been prejudiced in any way by the filings, which were late, if at all, by less than a day. *Third*, the defendants have asserted colorable defenses to the claims including challenging the bases of personal and subject matter jurisdiction, the factual basis for liability, and arguing that the claims are time-barred. "Trials on the merits are favored in federal courts [and] any doubt should be resolved in favor of [a motion] to set aside the judgment so that cases may be decided on their merits." *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 846 (6th Cir. 1983) (cleaned up). The plaintiff has not established any good grounds for a departure from that venerable principle in this instance.

III. Motion to Amend Complaint

The plaintiff proposes to amend the complaint to expand the allegations about the citizenship of several unincorporated entities named as defendants, in response to jurisdictional concerns raised in the Court's order to show cause, ECF No. 28, and he argues that the defendants will not be prejudiced by the proposed amendment. The PBPA defendants opposed the motion by reiterating all of the arguments mounted in their motions to dismiss, insisting that the amendment should be rejected because it would be "futile."

Motions to amend before trial generally are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) requires a party seeking to amend its pleadings at this stage of the proceedings to obtain leave of court. Although Rule 15(a)(2) says that "[t]he court should freely give leave [to amend] when justice so requires," leave may be denied for undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997).

The PBPA defendants argue that the proposed amendment should be denied as "futile," but that argument completely overlooks the substance of the proposed revisions to the pleading, which are aimed exclusively at bolstering the jurisdictional facts relating to citizenship of the parties. The merits of the defendants' grounds for dismissal are discussed in depth below. However, as to the specific revisions that the plaintiff proposes to make to shore up the allegations of party citizenship, the defendants have not established that those revisions would be in any way futile or unsatisfactory to address the jurisdictional questions identified in the Court's order to show cause (which was dismissed after the plaintiff submitted the same responsive details that he

now proposes to integrate in his amended pleading). The defendants will not be prejudiced by the amendment, and they have not offered any good reason to deny leave to amend, which generally is permitted freely in the early stages of litigation. The motion to amend the complaint will be granted.

### IV. Motion to Dismiss for Lack of Personal Jurisdiction

The PBPA defendants have filed serial and duplicate motions to dismiss the complaint arguing, among other things, that they do not have sufficient contacts with the Eastern District of Michigan to permit the Court to assert its judicial authority over them. They contend that the plaintiff failed to allege that the PBPA defendants "transact business" in the State of Michigan, which is the only apparently applicable ground for satisfying Michigan's long-arm statute. They also argue that the complaint does not allege any facts to support a finding that the PBPA defendants have any substantial contacts with the State of Michigan, that the claims arise out of those contacts, or that the exercise of jurisdiction based on any such contacts is otherwise constitutionally reasonable. Switching gears, the PBPA defendants assert that the allegations in the complaint establish that the defamation claim is untimely because it is pleaded that defendant Ash-Shafii first published the defamatory statement more than one year prior to the date when the defamation complaint was filed. They also say that Menge made statements verifying the truth of the alleged defamatory statements.

The plaintiff counters that personal jurisdiction is established because the complaint alleges that the statement republished by the PBPA defendants was not published exclusively in Illinois, since internet publications by their essence are "global" in nature and accessible from anywhere; the substance of the statement concerned a Michigan resident and his employment with a Michigan police agency, and was based on a prior statement by a local elected official in Michigan; and the

causing of any "consequences" to occur within the state from a tortious act is sufficient to satisfy the State of Michigan's long-arm statute. The plaintiff says that the defamation claim against the PBPA defendants is timely because the complaint was filed within one year after the October 11, 2024 "republication" of the slander by those defendants. He also denies that he ever stated that he was fired from the police department.

A. Applicable Law

The PBPA defendants brought this set of motions under Federal Rule of Civil Procedure 12(b)(2) and (6), but the personal jurisdiction arguments invoked by subparagraph (2) deserve the most attention. The applicable standards are well known. "A plaintiff filing a lawsuit in federal court bears the burden of establishing a prima facie case that the district court can maintain personal jurisdiction over each defendant." *Carbone v. Kaal*, 140 F.4th 805, 808 (6th Cir. 2025) (citing *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022)). "He can meet this initial burden 'merely through the complaint,'" which "requires 'establish[ing], with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause.'" *Id.* at 808-09 (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)). "If the plaintiff makes a prima facie case of personal jurisdiction, the burden shifts to the defendant," who then "must support its motion to dismiss with evidence showing that the district court lacks jurisdiction over it." *Id.* at 809. "If the defendant provides such evidence, then the burden shifts back to the plaintiff," whereupon the "plaintiff 'may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Ibid.* (quoting *Peters*, 40 F.4th at 437-38; *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014)). "[T]he

plaintiff must establish the district court's jurisdiction 'over each defendant independently.'" *Ibid.* (quoting *Beydoun*, *supra.*)

The plaintiff's claims against the out-of-state PBPA defendants are based on Michigan law, so this Court can exercise personal jurisdiction over them "'only if a court of the forum state could do so.'" *Carbone v. Kaal*, 140 F.4th 805, 809 (6th Cir. 2025) (quoting *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021)). The plaintiff must satisfy both Michigan law and the Due Process Clause of the Fourteenth Amendment. *Ibid.* (quoting *Beydoun*, 768 F.3d at 504). That brings us to Michigan's so-called Long Arm statute, which describes both general personal jurisdiction and limited, or case-specific, jurisdiction. *See* Mich. Comp. Laws §§ 600.701, 600.711, 600.705, and 600.715. It is undisputed that general personal jurisdiction does not apply in this case, which would require a finding that the defendants' connection to Michigan "is 'so continuous and systematic as to render it essentially at home there.'" *Carbone*, 140 F.4th at 809 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (cleaned up).

The Michigan statute lays out the broad adjudicatory reach of Michigan courts exercising case-specific jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Michigan courts have interpreted the State's Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). So, in this instance, "'the two questions become one.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)).

The Fourteenth Amendment's Due Process Clause "'protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.'" *Carbone*, 140 F.4th at 809 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)). The familiar touchstone is a finding of "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 809-10 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Specific jurisdiction comes from the contacts with the forum that "deriv[e] from, or connect[] with, the very controversy that establishes jurisdiction.'" *Ibid.* (quoting *Goodyear*, 564 U.S. at 919). "For a court to exercise specific jurisdiction over a defendant, a plaintiff must establish a 'substantial connection' among 'the defendant, the forum, and the litigation.'" *Ibid.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The Court's "'primary concern' under either type of jurisdiction 'is the burden on the defendant.'" *Ibid.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 263 (2017)).

The Sixth Circuit has articulated a three-part test for establishing specific jurisdiction. "[T]he district court's exercise of personal jurisdiction over Defendants would comport with due process if: (1) Defendants purposefully availed themselves of the privilege of acting, or causing a consequence, in [the forum state]; (2) [the plaintiff's] claims against Defendants arise from Defendants' activities in [the forum]; and (3) Defendants' actions, or the consequences they caused, have a substantial enough connection with [the forum] to make it reasonable for a court [sitting therein] to exercise jurisdiction." *Ibid.* (citing *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 441 (6th Cir. 2022); *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). It is the first element of that test that is in dispute here.

The defendant's physical presence within the jurisdiction is not a necessary condition for personal jurisdiction, but "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 284 (quoting *Int'l Shoe*, 326 U.S. at 316). "Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (internal quotation marks omitted). "The defendant's conduct and connection with the forum must be such that he should reasonably anticipate being haled into court there." *Ibid.* "'The contacts must be the defendant's own choice,' and they must 'create a substantial connection with the forum State.'" *Id.* at 810-11 (quoting *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021); *Burger King*, 471 U.S. at 475). The Sixth Circuit has "described the purposeful-availment component as 'the constitutional touchstone of personal jurisdiction.'" *Id.* at 811 (quoting *AlixPartners*, 836 F.3d at 550).

"In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court 'establishe[d] that the effects of intentional torts sometimes may establish personal jurisdiction,' *Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023), where the 'intentional, and allegedly tortious, actions were expressly aimed at [the forum state],' *Calder*, 465 U.S. at 789." *Carbone*, 140 F.4th at 811. However, "[m]ore recently, in *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court acknowledged the limits of *Calder*'s 'effects' test," rejecting the argument that the district court had "personal jurisdiction over the defendant because he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada," and instead "concluding that the defendant had 'no jurisdictionally relevant contacts with Nevada,' because he 'never traveled

to, conducted activities within, contacted anyone in, or sent anything or anyone to [the forum state].'" *Ibid.* (quoting *Walden*, 571 U.S. at 289).

B. Discussion

The Sixth Circuit discussed at some length the contours of the hazy zone between *Calder* and *Walden* in its recent decision in *Carbone v. Kaal*, 140 F.4th at 811-12. Recall that in *Calder*, a California actress brought a libel suit in California against a reporter and an editor from the National Enquirer, a Florida-based company. The plaintiff's libel claims were based on an article that the defendants wrote and edited in Florida for the magazine. The Court, focusing on "'the relationship among the defendant, the forum, and the litigation,'" held that the lower court properly exercised jurisdiction, emphasizing that California was "the focal point both of the story and of the harm suffered," because the story was drawn from California sources, concerned the California activities of a California resident, and questioned the professionalism of a California actress whose television career was centered in that state. 465 U.S. at 788-89. "Jurisdiction over petitioners," the Court concluded, "is therefore proper in California based on the 'effects' of their Florida conduct in California," effects that were both intended and foreseeable. *Id.* at 789.

In *Walden,* the plaintiffs, two airline passengers, brought a civil rights action under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), against a Drug Enforcement Administration agent in their home state of Nevada after the agent seized their funds at the airport in Atlanta, Georgia. The Supreme Court held that the Nevada court lacked personal jurisdiction over the agent, despite his knowledge that the plaintiffs were Nevada residents, because none of his activities took place in Nevada. The Court emphasized that the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." 571 U.S. at 290-91. Instead, the relevant contacts are those that center on the

relationship among the defendant, the forum, and the litigation. The analysis does not change, the Court held, when intentional torts are involved, even if it was foreseeable that the plaintiff would be harmed. *Id.* at 291.

The *Carbone* court also discussed the facts of *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), which fell on the *Walden* side of the spectrum. *Blessing* involved California and New Jersey residents who tweeted negative comments about a Kentucky high school student's conduct at a March for Life rally in Washington D.C. Because the defendants in that case "had no preexisting relationship with the plaintiffs; the tweets did not target Kentucky readers; the plaintiffs never alleged that anyone in Kentucky read the tweets; and the defendants never sought the benefits or protections of Kentucky's laws," no personal jurisdiction existed. *Carbone*, 140 F.4th at 811 (citing *Blessing*, 988 F.3d at 892-83). The court also referred to *Johnson v. Griffin*, 85 F.4th 429 (6th Cir. 2023), where an out-of-state plaintiff posted tweets containing false information about a Tennessee resident's sexuality, but personal jurisdiction was found because "[t]he tweets drew from a Tennessee source to attack a Tennessee resident for his conduct in Tennessee. Indeed, the tweets mentioned Tennessee directly, identified the plaintiff's Tennessee employer, and allegedly led to the termination of the plaintiff's employment in Tennessee." *Carbone*, 140 F.4th at 812 (citing *Johnson*, 85 F.4th at 434-35).

*Carbone* also was a defamation case. The plaintiff, a Connecticut resident, sued two Swiss companies and individuals who lived in Switzerland, California, and Illinois. He sued in Ohio because the defendants maintained servers there, which presumably stored the defamatory tweets. *Carbone*, 140 F.4th at 807. The court held that no personal jurisdiction could be found in Ohio because the defendants "never visited Ohio or contacted anyone there," there was no allegation that "anyone in Ohio read the defamatory statements" or that the "allegedly tortious actions []ever

targeted anyone in Ohio," and the plaintiff never alleged that "the defamatory statements concerned conduct occurring in Ohio or Ohio residents" or that "anyone in Ohio read the statements or that he suffered an injury in Ohio." *Id.* at 812.

As in *Carbone*, the record demonstrates that this case is more like *Walden* than *Calder*, and the plaintiff's showing of the PBPA defendants' minimum contacts with Michigan comes up short. He has failed to allege with reasonable particularity any facts suggesting that the PBPA defendants had any jurisdictionally relevant contacts with the State of Michigan sufficient to support the exercise of personal jurisdiction.

The Sixth Circuit found it dispositive in *Blessing* that "the defendants did not direct their actions at Kentucky — where the plaintiffs lived — via their tweets . . . because the defendants had no preexisting relationship with the plaintiffs; the tweets did not target Kentucky readers; the plaintiffs never alleged that anyone in Kentucky read the tweets; and the defendants never sought the benefits or protections of Kentucky's laws."  Similarly here, there are no allegations in the complaint that the PBPA defendants had any "preexisting relationship" with the plaintiff; there are no facts alleged suggesting that the PBPA defendants in any way "targeted Michigan readers" with their publication; there are no allegations that any persons in Michigan ever read the publication — notwithstanding the "global" availability of information via the internet; and there are no facts alleged suggesting that the PBPA defendants in any other way ever made any effort to secure the "benefits or protections" of Michigan state laws.

By way of contrast, in *Johnson* the defendant "sent a series of tweets asserting that a Tennessee CEO 'had engaged in homophobic conduct,'" and "[t]he tweets drew from a Tennessee source to attack a Tennessee resident for his conduct in Tennessee," "mentioned Tennessee

- 14 -

directly, identified the plaintiff's Tennessee employer, and allegedly led to the termination of the plaintiff's employment in Tennessee." *Johnson*, 85 F.4th at 434-35.

Here, the complaint does not allege any facts concerning the sourcing of the information about Menge's termination. However, the plaintiff attached to his response what appears to be a copy of the internet publication in dispute, dated October 11, 2024. *See* Plf.'s Resp, ECF No. 33-2, PageID.461-62. The only sources alluded to in the document are a "televised meeting" of the Highland Park City Council, during which certain statements reportedly were made by defendant Ash-Shafii, and a written decision from the United States District Court of the Eastern District of Michigan in Menge's First Amendment retaliation lawsuit against the City, *Menge v. City of Highland Park*, No. 23-11339, 2024 WL 3220719, at *4 (E.D. Mich. June 27, 2024). The substance of the article appears to consist almost wholly of lightly edited passages from the body of the district court's opinion dismissing Menge's prior suit. There is some overlap with the facts in *Johnson*, since the article attributed to the PBPA defendants does "mention" Michigan and the police agency that employed the plaintiff, and it also discusses purported misconduct by Menge in the course of his Michigan employment. Crucially absent from the pleading, however, are any allegations about (1) specific contacts by PBPA defendants with any sources in the State of Michigan, or (2) the situs of any specific consequences flowing from the allegedly defamatory publication.

Contrast the allegations of sourcing here with those in *Calder*, on which the plaintiff principally relies. In *Calder*, the Supreme Court found it dispositive that the Florida-based reporter who was sued "frequently traveled" to California, that he conducted research while in Florida by placing phone calls to California sources, and that he called the plaintiff's home to solicit a reaction from the plaintiff's husband on a draft of the article. *Calder*, 465 U.S. at 785-86. No similar facts

are pleaded here evidencing any direct contact with any Michigan persons relied upon as sources for the allegedly defamatory publication, nor are there allegations that the PBPA defendants, or anyone involved with them, had "frequent" (or any, for that matter) in-person or telephonic contacts with anyone in Michigan concerning the content of the story.

Next, contrast the facts concerning the harm suffered. In *Calder* the Supreme Court found it significant that the defendants "knew that the brunt of [the] injury [from their publication] would be felt by [the plaintiff] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Calder*, 465 U.S. at 789-90. Here, unlike in *Johnson*, there are no specific allegations in the complaint suggesting that the PBPA defendants had any knowledge about the locality of the plaintiff's current professional activities, nor are there any allegations indicating that they widely circulated publications specifically directed at any audience in the State of Michigan. And unlike in *Johnson*, it is not alleged here that the PBPA defendants' "republication" of information had any impact on the plaintiff's employment with the Highland Park Police Department. The plaintiff says that he has been "questioned" as a witness on cross-examination about the substance of the publication; however, he has not alleged any particularized facts indicating when or where any such "questioning" occurred, nor has he made any effort to quantify in any way any harm to his ongoing professional reputation.

There are simply no facts alleged in the complaint establishing a particular locale for either the defendants' sourcing of the information or any ultimate harm that arose from the publication within Michigan. The plaintiff here points to nothing more than a single publication of information to the internet at large, which the plaintiff says was "accessible" in Michigan, where the substance of the publication appears to be drawn from public meeting records of municipal authorities and a public record decision of a federal district court. It is well recognized in this circuit that the mere

maintenance of and publication of information to a generally accessible internet website that might be accessed by readers in a particular forum is not enough by itself to support the exercise of personal jurisdiction in that forum. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) ("The maintenance of NGS's website, in and of itself, does not constitute the purposeful availment of the privilege of acting in Michigan. An Internet website by its very nature can be accessed internationally. By maintaining a website in Pennsylvania, NGS is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment."). That is all that the plaintiff has alleged here, and it is not enough to satisfy the Due Process Clause's requirement that the plaintiff show that the PBPA defendants purposefully availed themselves of the privilege of acting, or causing a consequence, in Michigan.

The PBPA defendants' motions to dismiss for want of personal jurisdiction will be granted. Because of this disposition, there is no need to address the other arguments in the defendants' motions.

## V. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The complaint in this case alleges claims against the PBPA defendants arising solely under state law and alleged subject matter jurisdiction based on diversity of citizenship. The complaint also alleges claims against defendant Khursheed Ash-Shafii — a Michigan citizen — arising solely under federal law and asserts jurisdiction against him based on federal question jurisdiction.

In another motion to dismiss, the PBPA defendants argue that the entire lawsuit should be dismissed because the Court lacks subject matter jurisdiction due to the failure of complete diversity, where both the plaintiff and one of the named defendants allegedly are citizens of the

State of Michigan. However, the Court acknowledged and dismissed this jurisdictional concern in a previously issued order to show cause, where the Court observed that the inclusion of defendant Michigan citizen Ash-Shafii ordinarily would create a jurisdictional lacuna because of the violation of the complete diversity rule. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 564 (2005) ("A failure of complete diversity, unlike the failure of some claims to meet the requisite amount in controversy, contaminates every claim in the action."). But there exists a "limited exception to the complete-diversity rule when a plaintiff joins a nondiverse defendant sued under federal law with a diverse defendant sued in diversity." *In re Olympic Mills Corp.*, 477 F.3d 1, 6 n.7 (1st Cir. 2007) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959) ("Since the Jones Act provides an independent basis of federal jurisdiction over the non-diverse respondent, . . . the rule of *Strawbridge v. Curtiss*, 7 U.S. 267 (1844), does not require dismissal of the claims against the diverse respondent.") (superseded by statute on other grounds)). Order to Show Cause, ECF No. 28, PageID.247. The plaintiff has not cited any legal authority holding that the *Romero* exception to the complete diversity requirement should not apply in this case.

The PBPA defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

## VI. Concluson

The Court has subject matter jurisdiction over the dispute described in the complaint, but it does not have personal jurisdiction over defendants PBPA or the Rockford Policemen's Benevolent and Protective Association, Unit 6. Those defendants have offered sufficient reasons to set aside the default entered against them by the Clerk. The plaintiff has offered sufficient grounds to permit him to amend the complaint.

Accordingly, it is **ORDERED** that the motions to set aside the default by defendants PBPA and the Rockford Policemen's Benevolent and Protective Association, Unit 6 (ECF Nos. 20, 21, 24, 25) are **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to amend the complaint (ECF No. 32) is **GRANTED**.

It is further **ORDERED** that the motion to dismiss for want of subject matter jurisdiction by defendants PBPA and the Rockford Policemen's Benevolent and Protective Association, Unit 6 (ECF No. 41) is **DENIED**.

It is further **ORDERED** that the motions to dismiss for want of personal jurisdiction by defendants PBPA and the Rockford Policemen's Benevolent and Protective Association, Unit 6 (ECF Nos. 18, 19, 22, 23) are **GRANTED** and the case against them is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: November 3, 2025